AUGUSTUS W. WINSOR *et. al. vs.* MARY H. PETTIS *et als.*

A bill in equity was filed by two daughters of P., by his first wife, with their husbands, against his second wife who survived him, and her children by him, to set aside several conveyances of realty and personalty made by P. during his lifetime to his second wife, and his children by her, charging such conveyances to be the result of undue influence and fraud practised by the different grantees and donees acting in concert upon his weakness and incompetency. The widow was described in the bill as administratrix, as follows : "That the said P. died on the sixteenth day of February, A. D. 1871 ; the said M. H. P., respondent, having been since appointed, and having acted as his administratrix." The bill closed with numerous interrogatories which were not numbered, and which required answers from different respondents : —

*Held,* on demurrer, to be a proper case for equitable relief.

*Held,* further, that the bill was not objectionable on the ground of multifariousness.

*Held,* further, that the administratrix was sufficiently made a party.

*Held,* further, that the interrogatories should be numbered.

BILL IN EQUITY filed by Augustus W. Winsor and Almirah his wife, and Welcome A. Potter and Maria his wife, the two female complainants being children of James M. Pettis by his first wife, against Mary H. Pettis, his second wife, and James L. Pettis and Ednah H. Pettis, his children by her. The bill charged that James M. Pettis was born in 1783 and married Phœbe Alverson, his first wife, in 1809 ; that she died in 1829, when the female complainants were young girls, and that one of them, Maria, did all the family work until the marriage of her father with his second wife Mary, which took place in 1835 ; that James M. Pettis by great labor and frugality amassed, with the assistance of the female complainants, considerable property before his second marriage, and that he repeatedly assured his daughters, the complainants, that the property should be theirs in return for their industry and economy. The bill proceeds :

" That the said James M. Pettis died on the sixteenth day of February, A. D. 1871, the said Mary H. Pettis, respondent, having been since appointed, and having acted as his administratrix, and that your orators and the respondents are and comprise all the heirs at law and next of kin of the said James M. Pettis ; that said James M. Pettis expressed repeatedly in his lifetime the intention that all his children should share in the distribution of his property ; that for several years previous to his death the mind of the said James M. Pettis was weak and infirm, and in a state of increasing unsoundness, attended with and resulting in incompe-

tency on his part to transact any business, or make any contract, or otherwise dispose of any of his property; and that during said several years he was incompetent to transact any business, make any contract, or otherwise dispose of any of his property. That during that time and up to the time of his death he resided with the said Mary H. Pettis, James L. Pettis, and Ednah H. Pettis, the respondents; that he, the said James M. Pettis, reposed and placed great trust and confidence in the said respondents, his said second wife, and the children born to him by her, and that the said Mary H. Pettis, James L. Pettis, and Ednah H. Pettis fraudulently combined to secure to themselves the property of the said James M. Pettis, to the exclusion of your orators therefrom, and did violate and abuse said trust and confidence reposed in them by said James M. Pettis, and fraudulently procured and unduly influenced the said James M. Pettis, in his then weak, infirm, and incompetent state of mind, to execute certain conveyances whereby certain portions of his property were conveyed to the said Mary H. Pettis, certain other portions to the said James L. Pettis, and certain other portions to the said Ednah H. Pettis; that there was no consideration for said conveyances so fraudulently and by undue influence, without consideration, and in violation of trust and confidence, obtained, being as follows:"—

Here follow the descriptions of four deeds of realty executed by James M. Pettis: two to James L. Pettis, dated respectively April 15, 1867, and April 24, 1868; one to Ednah H. Pettis, dated February 15, 1870; and one to H. L. Wood, dated January 26, 1870. Wood by deed of same date conveying the property to Mary H. Pettis.

The bill alleges that these conveyances covered the entire real estate of James M. Pettis, that the respondents hold such realty to the exclusion of the complainants, and that the value of the realty is $60,000   The bill then proceeds:—

"And your orators complain and say that the said James M. Pettis being the owner of certain funds deposited in certain savings banks in the city of Providence, and being a creditor of one Levi B. Darling to a certain amount, being proceeds of bank stock belonging to said James M. Pettis, and sold by said Levi B. Darling, under a power of attorney from said James M. Pet-

tis, the respondents, on or about the twentieth day of October, A. D. 1869, did abuse the confidence reposed in them by said James M. Pettis, and fraudulently and by undue influence procure from the said James M. Pettis, who was then weak and infirm in mind, and of unsound mind, and not competent to make any contract as hereinbefore stated, certain transfers of certain portions of the said funds so deposited in said banks' to themselves, or to one or more of themselves, or to some person or persons for them, or by them designated; and did further abuse said confidence, and fraudulently and unduly influence said James M. Pettis, who was then of weak mind, and unduly influenced, to withdraw the remaining portion of said funds from said banks, and place the same in the hands or under the control of the said respondents, or some one or more of them; and that the said respondents did with the said funds on or about the twentieth day of October, 1869, purchase a certain open mortgage made by said Darling and his wife, to one Ely Aylsworth, a copy of which mortgage is hereto annexed, and made a part of this bill, the transfer of said mortgage from said Aylsworth being taken in and to the name of said Mary H. Pettis, a copy of said transfer being hereto annexed and made a part of this bill; and that said respondents, by means of holding said mortgage given by said Darling and wife, procured and compelled from said Darling the payment to them, or some one of them, by said Darling, of the amount of said funds paid by them for said mortgage, and also the amount previously due from said Darling to said James M. Pettis, for both of which said amounts they have failed to make any account or inventory whatever to the estate of the said James M. Pettis. And your orators complain and say that by said transfer of said deposits so fraudulently obtained, and by the fraudulent acquisition of the control and possession of said funds as aforesaid, and said purchase of said mortgage and the procuring of the payment to some one of them of the amount of said funds and said prior debt due from said Darling, the said respondents became possessed of the entire personal estate of the said James M. Pettis, to the exclusion of your orators, also next of kin to the said James M. Pettis, therefrom, and contrary to the repeatedly expressed intention of the said James M. Pettis. And your orators further say that said personal property so fraud-

ulently obtained and held by the respondents is of great value, amounting, to the best of your orator's judgment, information, and belief, to at least $11,000 ; that there are no debts due from the estate of the said James M. Pettis, and that there is no reason why said estate should not be administered and distributed among the next of kin of the said James M. Pettis, according to law."

" And your orators say that said fraudulent conveyances, transfers, and proceedings of, and relative to, the real and personal estate were unknown to the complainants until after the death of the said James M. Pettis, and that they were executed and procured without the knowledge of your complainants."

" And your orators further say that during all the lifetime of the said James M. Pettis he was on the most affectionate terms with your orators, and in the habit of visiting them constantly; that since the decease of the said James M. Pettis, and the discovery by your orators of the execution of the conveyances hereinbefore enumerated, and the fraudulent appropriation of the personal estate hereinbefore mentioned, the said respondents have made certain offers of compromise and settlement to one of your orators, and that your orators, being anxious to avoid litigation and the publicity and scandal attendant thereupon, have endeavored to agree with the said respondents upon some mode of compromise and settlement of the matters in dispute between them relative to the said estate of the said James M. Pettis, and have delayed to bring this their bill of complaint in the hope that the said matters would have been amicably settled, but they have been unable to make any compromise or settlement with the said respondents."

" And your orators well hoped," &c.

After the confederacy and jurisdiction clauses, the interrogating clause contained a series of interrogatories not numbered, but embracing forty-seven questions which each of the respondents were required to answer, although some of the interrogatories concerned the acts of different and distinct respondents. The prayer for relief asked that the respondents might be declared as to the realty trustees of the heirs at law of James M. Pettis, and that Mary H. Pettis might, as to the personalty, be declared a trustee of the estate of James M. Pettis, and that

they might be required to account. The prayer also asked that the respondents might be enjoined from alienating any of the property described in the bill in their hands, that the intestate personal estate of James M. Pettis might be administered, and that one sixth of the residue might be paid to each of the female complainants.

To this bill each of the three respondents demurred ; the three demurrers being identical in form and substance ; and each demurrer stated the following causes : —

" *First.* That said complainants have not, in and by their said bill, made or stated such a case as doth or ought to entitle them to any such discovery or relief as is thereby sought or prayed for against this defendant.

" *Second.* That it appears in and from said bill that, as to so much thereof as prays discovery or relief on account of or concerning the personal estate and property of said James M. Pettis, deceased, the said complainants have a plain, adequate, and full remedy at law.

" *Third.* That it appears in and by said bill that the same is exhibited against this defendant and the several other persons named as defendants thereto for distinct matters and causes, in many of which, as appears by said bill, this defendant is not in any manner interested or concerned, and that said bill is altogether multifarious.

" *Fourth.* That it appears in and by said bill that the complainants have charged the defendants named therein with abuse and violation of trust and confidence, and with fraudulently procuring and inducing the execution of certain conveyances of real estate therein named, and with fraudulently obtaining certain personal estate and money ; but they do not allege or specify in what manner this defendant has abused or violated any trust or confidence, or has fraudulently procured or induced the execution of any conveyances of real estate, or has fraudulently obtained the possession of any personal property or money ; and said complainants have not numbered the interrogatories contained and propounded in said bill, and have not specifically addressed the same, or any one of the same, to this defendant, nor required him to answer the same, or any of the same, so that this defendant is unable to know what specific charges of violation and abuse of

trust or confidence, or of fraudulent procurement and induce-
ment, or fraudulent obtaining, are made against him, and he
cannot answer the same.

" *Fifth.* That it appears in and by the said bill that an ad-
ministratrix on the estate of James M. Pettis was duly appointed
and has acted as such, and that she is a necessary party to said
bill, yet the said complainants have not made the administratrix
of said James M. Pettis a party thereto."

*George H. Browne & Charles H. Parkhurst,* for the respon-
dents, in support of the demurrers.

It appears from the bill that Mary H. Pettis was *appointed*
and *acted* as administratrix of the estate of her deceased husband,
James M. Pettis. It is a necessary legal presumption from alle-
gations of this character, which appear in the bill, that said ad-
ministratrix returned an inventory. That being the case, so far
as the bill seeks to bring into this controversy the personal estate
of the decedent, it is perfectly clear that the complainants have a
full, adequate, and complete remedy at law. *Blake* v. *Butler,*
*Adm'r,* 10 R. I. 133. This bill demands an account of the per-
sonal estate of the late James M. Pettis. It is hardly necessary
to quote authority to satisfy the court that Mrs. Mary H. Pettis,
in her representative capacity as administratrix of her deceased
husband, should be and is a necessary party defendant to this bill.
She is not made such party, and is only charged, as are the rest of
the defendants, generally and indefinitely, with some kind of un-
definable conduct which led Mr. Pettis to convey to his wife and
his two children, by independent instruments of different dates,
certain real estate ; and with equal indefiniteness somebody is
sought to be charged with some kind of responsibility touching
certain personal property for which, as administratrix, if any-
body, she can only be held to be accountable. She is not such
party, therefore there is a non-joinder to which this demurrer is
directly applicable. And on this ground the demurrer should
be sustained.

The court will keep in mind the fact that this bill is brought
by the children of a first wife against those born of a second, who
is the surviving widow. It charges the fraudulent procurement,
and a fraudulent combination to procure, the transfers and con-
veyances of property, real and personal, to the three defendants,

by a violation and abuse of the trust and confidence reposed in them by James M. Pettis, the decedent.

The deeds of real estate are described in the bill and are set forth as exhibits thereto. There then follows a charge touching certain funds deposited in certain savings banks, which the three defendants are charged with having procured from James M. Pettis, deceased, fraudulently and by abuse of his confidence in them, and that the same were placed " in the hands, or under the control, of the said respondents, or some one or more of them."

Following that is an allegation to the effect that with the funds so acquired a mortgage was purchased originally made by one Darling to one Aylesworth, and transferred, not to the three defendants but to only one, to wit, Mary H. Pettis, and subsequently the amount of said mortgage by said Darling, together with amounts previously due from him to the said James M. Pettis, deceased, were compelled to be paid, as the bill charges, to the defendants or some one of them, but *to which* is not alleged, nor does any *suggestion as to which appear :* but the bill concludes with a series of interrogatories which are not addressed to any one of the several defendants, but which are each addressed to all.

How can Miss Ednah H. Pettis answer these questions, so far as they relate to any deed made by her father to her mother or her brother, and how can either of the last named persons reply as to any deed made to Ednah H. Pettis ?

How, also, can all of these defendants answer as to the bank stock or its proceeds, referred to in the second interrogatory, and alleged in the bill to have been transferred to Mary H. Pettis, widow and administratrix of the decedent ? The allegation is distinct in the bill ; and the question asked in the interrogatories, which are neither numbered nor directed to any particular defendant, distinctly sets forth that the transfer of the mortgage was made to Mary H. Pettis, one only of the defendants.

How can James L. Pettis and Ednah H. Pettis make any answer to an interrogatory which is directed to them, and which their mother alone can answer ?

The charge of " combining and confederating," " the use of undue influence upon the weak and infirm mind of an aged father," " the abuse and violation of trust and confidence re

posed," cannot avail these complainants to support the charges which they have made.

Each of these defendants is certainly entitled to know what specific charges of violation and abuse of trust or confidence, or of fraudulent procurement and inducement, or fraudulent obtaining, are made against him or her ; and because such charges are not specifically made in this bill the demurrer of each of the defendants should be sustained.

It is a rule in equity that two or more distinct subjects cannot be embraced in the same suit. The offence against this rule is termed multifariousness, and will render a bill liable to a demurrer. 1 Daniells' Chan. Prac. (4th Am. ed.) 334, 335, 559 ; *West* v. *Randall,* 2 Mason, 201 ; *Carter* v. *Treadwell,* 3 Story, 51 ; *Boyd* v. *Hoyt,* 5 Paige, 79 ; *Swift* v. *Eckford,* 6 Paige, 27 ; *Jackson* v. *Leggett,* 2 Barb. Ch. 581 ; Story Eq. Pl. §§ 271, 530.

*Charles S. Bradley, James Tillinghast & John F. Lonsdale,* for the complainants, *contra.*

The complainants have no adequate remedy at law as to the personal property.

*a.* Chapter 174, §§ 18, 19, of the Gen. Stat. R. I. provides no adequate remedy, because it only applies to cases where the person summoned and examined by the court is " suspected of concealing or of having embezzled or conveyed away any of the personal estate *left* by the testator or intestate." A Court of Probate might well decline to take jurisdiction under that statute in a case like that made by the present bill, where the property is alleged to have been transferred by the intestate in his lifetime, and it is sought to set aside such transfer on account of its having been obtained by undue influence. Such a case could properly be reached by a Court of Equity alone, particularly where the administratrix, as in this case, is alleged to have been guilty herself of the fraud and of collusion with others.

*b.* Chapter 179 of the Gen. Stat. R. I., Of the Settlement of Accounts of Executors and Administrators, affords no adequate remedy in the case made by the bill. That statute makes it the duty of executors and administrators to account annually, confers upon the Probate Court power to issue a citation to executors and administrators requiring them to account ; and enacts that in case they do not account after being cited, they shall be held re-

sponsible for the full value of the personal property of the decedent, and shall be entitled to no compensation. It does not apply to a case like the present one. The Probate Court does not seem to be clothed with any power to compel the administrator to account.

The administration of intestate estates is an established branch of equity jurisdiction, concurrent with the Court of Probate. *Mallett* v. *Dexter*, 1 Curtis, 178; *Pratt* v. *Northam*, 5 Mason, 95; *Blake* v. *Butler*, 10 R. I. 137; *Rathbone* v. *Lyman*, 8 R. I. 158.

A Court of Equity having acquired jurisdiction by the allegation and establishment of undue influence over the mind of the intestate, and the procuring thereby of transfers of his property, will go on and administer the whole estate. *Daboll et al., Adm'rs,* v. *Field et al.* 9 R. I. 266.

If there be a remedy by statute, there being none by common law, the jurisdiction of a Court of Equity in the case remains intact. The remedy by statute does not destroy or oust the jurisdiction of a Court of Equity. Story Eq. Jur. § 80; *Rathbone* v. *Lyman*, 8 R. I. 158.

The bill is not multifarious. It alleges a combination upon the part of all the defendants to secure from the deceased by undue influence over his weak and impaired intellect, and by abuse and violation of the trust and confidence reposed in them by him, the conveyance to them of his entire estate. The mere fact that they took by separate instruments, executed at different times, is consistent with the existence of a combination or plan on their part as alleged in the bill, and does not therefore render the bill liable to objection *upon demurrer for multifariousness.* The object of the suit is single, to compel the restoration of the real and personal estate acquired by the fraudulent combination of the defendants. The bill alleges certain transactions, all parts of one scheme of fraud, in no wise so distinct and disconnected as to render their consideration perplexing to the court or injurious to the interests of any of the respondents. Story's Eq. Pl. § 530; *Campbell* v. *Mackay*, 1 Myl. & C. 603; *Attorney General* v. *Craddock*, 3 Myl. & C. 85; *Salvidge* v. *Hyde*, 5 Madd. 138; *Earl Vane* v. *Rigden*, L. R. 5 Ch. Ap. 663; *Poynton* v. *Poynton*, L. R. 12 Eq. 547; *Coates* v. *Ligard*,

L. R. 19 Eq. 56 ; *Sanders* v. *Kelsey*, 10 Jur. 833 ; *Innes* v. *Mitchell*, 4 Drew. 97, 98 ; *Bowers* v. *Keesecher*, 9 Iowa, 422 ; *Gaines* v. *Chew*, 2 How. U. S. 619 ; *N. E. Com. Bank* v. *Newport Steam Factory*, 6 R. I. 190 ; *Arnold* v. *Arnold*, 9 R. I. 397.

The character of the wrong charged in the bill is of itself of such a nature as to preclude a statement of the special manner in which such particular fraudulent transfer was obtained.

Mary H. Pettis is made a party to the bill, and it is stated that she was appointed administratrix of the estate of her deceased husband, and relief is sought against her in that capacity.

*March* 3, 1877. POTTER, J. The first ground of demurrer is that the complainants have not made a proper case for relief in equity.

The second is that there is a plain, full, and adequate remedy at law. We cannot see that there is any remedy at common law, and under the statutes regulating probate jurisdiction there is no adequate remedy ; and if there was, there has not been such a commencement of proceedings in the Probate Court as to oust this court of its concurrent jurisdiction ; and if jurisdiction had been taken for the purpose of investigating the fraud, this court might then proceed further, if necessary, in the settlement of the estate.

The third objection is multifariousness. We do not consider this a valid ground for dismissing the bill. Parties must not combine distinct matters in one suit ; but in the present case, although the deeds are to three different parties, the grantor was the same in all, and the ground of relief is undue influence over a weak mind, and a combination between the defendants in exercising that influence. We think they can well be investigated together, and that in such a case much of the evidence may apply to all the defendants.

And we think that the administratrix is sufficiently made a party to the bill, and that the charges of fraud and undue influence are sufficiently stated.

The demurrers are overruled on all points except as to numbering interrogatories.

In regard to interrogatories, our rules adopt the Rules of the English Chancery as far as applicable, and especially so far as the same may be adopted by the United States Supreme Court.

By the English Rules of August 26, 1841, interrogatories were required to be numbered; and this was further provided for by the Rules of August 7, 1852, Rule 15, which is retained in the Consolidated Orders of 1860, Order 11, and the Rule has been adopted by the Supreme Court.   United States Rules in Equity, Rule 41.

*Decree giving leave to amend by numbering the interrogatories and overruling the demurrers on other points.*